## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **E.M.,**<br>**[STREET ADDRESS REDACTED]**<br>**Washington, DC 20005**<br><br>                    **Plaintiff,**<br><br>           **v.**<br><br>**SHADY GROVE REPRODUCTIVE**<br>**SCIENCE CENTER P.C.**<br>**9601 Blackwell Road**<br>**Rockville, MD  20850**<br><br>                    **Defendant.** | Civil Action No: |

## COMPLAINT

This case involves Plaintiff E.M.'s lifelong dream to have biological children.  E.M. previously has filed a complaint in a related case in this Court, which is ongoing.  The case number of that related case is 1:19-cv-00657 (RC).  A copy of the pending complaint in that case (filed prior to removal to this Court) is attached as Exhibit 1, and we seek to adopt and incorporate it into this Complaint, in its entirety, to avoid the need for unnecessary repetition of its allegations here.  The instant Complaint relates principally to conduct that occurred after the first case was filed.

## PARTIES

1.      Plaintiff E.M. is an individual residing in the District of Columbia.

2.      Defendant Shady Grove Reproductive Science Center P.C. is a Maryland professional corporation, domiciled in Maryland, that is registered as a foreign corporation with the District of Columbia's Corporations Division.  Shady Grove Reproductive Science Center P.C. has two

registered trade names in the District of Columbia – "Shady Grove Fertility RSC" and "Shady Grove Fertility Reproductive Science Center" – but instead typically refers to itself using one of two trade names that are unregistered in the District of Columbia – "Shady Grove Fertility Center," and "Shady Grove Fertility" (all of these names and entities, collectively, referred to here as "SGF").  Shady Grove Fertility, LLC is a Maryland limited liability corporation, and is the sole shareholder in Shady Grove Reproductive Science Center P.C.  "Shady Grove Fertility Centers" and "Shady Grove Fertility Reproductive Science Center" are registered trade names in the State of Maryland for Shady Grove Reproductive Science Center P.C.  All of these entities are domiciled in Maryland and are sued, collectively, here.

## JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      This Court has personal jurisdiction over this matter because Defendant SGF maintains offices in the District of Columbia, provides services in the District of Columbia, uses real property in the District of Columbia, and has transacted business in the District of Columbia, including with the Plaintiff, who resides in the District of Columbia.

## FACTUAL ALLEGATIONS

5.       E.M. filed her earlier lawsuit against SGF in March, 2019.

6.      After E.M. filed the earlier lawsuit, SGF, E.M.'s health care provider, continued to refuse to treat E.M.

7.     E.M. arranged for another local treatment facility, Genetics and IVF Institute ("GIVF") to receive her frozen egg(s) from SGF and complete the remaining steps necessary to attempt to use her egg(s) to have a biological child.

8.     E.M.'s frozen eggs held by SGF were her biological material and her sole personal property.  E.M. paid SGF a storage fee for keeping her eggs securely in their liquid nitrogen tank, where E.M. understands they had been stored since retrieval in October 2012.

9.     E.M.'s frozen eggs are not SGF's property.

10.     On or about March 17, 2021, E.M. demanded in writing that SGF release one of her frozen eggs to be transported to her new doctor.  E.M. demanded the return of her property, namely, her preserved eggs and related documents.

11.     SGF refused to release her property pursuant to this demand, insisting that E.M. execute a different document, purporting to be an SGF form, before releasing her property.  This document was entitled, "Request for Release of Oocytes from Shady Grove Fertility."  E.M. agreed to execute SGF's purported form and did so, but modified it so that it did not include unreasonable and inappropriate conditions, such as a release from liability for SGF, that had not been agreed to when SGF commenced storing the frozen eggs.

12.     When E.M. agreed to freeze and store her eggs with SGF, she did not agree that SGF was entitled to impose such conditions upon her, such as a demand for a release from liability,  or otherwise inappropriately dictate the terms pursuant to which it would agree to return her own property to her.

13.     On or about April 5, 2021, using a modified version of SGF's purported form, E.M. demanded that SGF return one of E.M.'s eggs to her and provide her with the

relevant medical records necessary for another clinic, named in the document, to treat her in furtherance of her effort to have her own biological child.

14.     SGF refused to release any of E.M.'s eggs pursuant to her demand on April 5, 2021.  The claims alleged in this Complaint accrued on that date, and again on each subsequent occasion when she demanded return of her frozen eggs.

15.     On or about May 21, 2021, E.M. again demanded the return of her frozen eggs.

16.     SGF attempted to induce E.M. to sign another document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.

17.     SGF refused to return E.M.'s frozen eggs unless she signed the document.

18.     E.M. refused to sign the document.

19.     SGF refused to release E.M.'s eggs pursuant to her demand on or around May 21, 2021.

20.     On June 1, 2021, E.M. signed an authorization drafted by SGF agreeing to transfer her eggs using one of SGF's tanks.

21.     On or about June 3, 2021, without E.M.'s knowledge or consent, and in violation of the authorization she signed on June 1, 2021, SGF contacted GIVF and demanded that it send a tank that could be used to transport E.M.'s frozen eggs.

22.     SGF transported three of E.M.'s eggs to GIVF, in GIVF's tank, the same day.  SGF did not follow its multi-day quality control process in sending E.M.'s frozen eggs to GIVF.

23.     SGF's actions in transporting E.M.'s eggs on or around June 3, 2021 violated SGF's internal policy regarding transportation of frozen eggs.  SGF did not follow its own announced quality control process and procedure.

24.     After the June 3, 2021 transfer, E.M. had a number of frozen eggs remaining at SGF.

25.     On or around October 26, 2021, E.M. demanded that SGF send her remaining frozen eggs to GIVF.

26.     SGF attempted to get E.M. to sign a document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.

27.     SGF refused to return E.M.'s frozen eggs unless she signed the document.

28.     E.M. refused.

29.     SGF refused to release E.M.'s eggs pursuant to her demand on or around October 26, 2021.

30.     On or around January 19, 2022, E.M. demanded that SGF return her three remaining frozen eggs and signed the same documents previously drafted and sent by SGF.

31.     SGF refused to release her eggs.  Instead, SGF attempted to induce E.M. to sign a new document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.  The document was materially different than the one SGF sent in June 2021 and asked E.M. to sign before transferring her frozen eggs.

32.     SGF returned the frozen eggs on or around January 25, 2022.

33.     E.M. was harmed by SGF's refusal to return her property pursuant to her demands, including her frozen eggs and relevant medical records, which she needed to pursue her quest to become pregnant.  SGF's conduct caused E.M. severe harm and emotional distress.

34.     Now, E.M. is 50 years old and her medical providers have advised that she can no longer have biological children.

## COUNT I
### Conversion

35.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

36.     Beginning in or around October 2012, SGF had possession of E.M.'s property, specifically her frozen eggs and related medical records.

37.     Between April 5, 2021 and continuing through January 24, 2022, SGF unlawfully exercised dominion or control of E.M.'s personal property, in denial or repudiation of E.M.'s rights.

38.     E.M.'s eggs and related documents are her personal and biological property.

39.     She paid SGF to safely store them until she decided to use, transport, or destroy them.

40.     Between 2012 and 2019, E.M. had stored her frozen eggs with SGF in order to attempt to become pregnant through treatment with SGF.

41.     In or around 2019, SGF refused to treat E.M. and terminated her as a patient.

42.     In or around March 2021, GIVF agreed to treat E.M. using her eggs stored at SGF.

43.     On or about April 5, 2021, using a modified version of SGF's purported form, E.M. demanded and authorized in writing that SGF release and/or transport one of her eggs to GIVF and release/return the related documents to her.  The version of SGF's form that she used contained reasonable and necessary modifications that, *inter alia,* sought to deny SGF a release of liability, which it had improperly demanded before it would release the frozen eggs.

44.     The actions of SGF, commencing on or about April 5, 2021, in refusing to release the frozen eggs and medical records improperly denied E.M. access to her personal property and otherwise denied her the ability to exercise control, access, and use of her property.

45.     SGF unlawfully exercised dominion and control of E.M.'s eggs and related documents by refusing to convey them to E.M.'s respective designees.  SGF's refusal was, improperly, in denial and repudiation of E.M.'s property rights.  This conduct, commencing on or around April 5, 2021, constituted conversion.

46.     SGF had possession of E.M.'s frozen eggs at the time the demand was made on or about April 5, 2021.

47.     SGF had possession of E.M.'s medical records at the time the demand was made.

48.     The frozen eggs and medical records were the property of E.M.

49.     SGF refused to release and/or transport the frozen eggs and medical records that belonged to E.M.

50.     The actions of SGF in refusing to release the frozen eggs and medical records denied E.M. access to her property and otherwise denied her the ability to exercise control, access, and use of her property.

51.     SGF unlawfully exercised dominion and control of E.M.'s eggs and related documents by refusing to convey them to E.M.'s respective designees and her personally.

52.     On or about May 21, 2021, E.M. again demanded the return of her frozen eggs.

53.     SGF had possession of E.M.'s frozen eggs at the time the demand was made.

54.     The frozen eggs were the property of E.M.

55.     SGF refused to release and/or transport the frozen eggs that belonged to E.M.

56.     The actions of SGF in refusing to release the frozen eggs denied E.M. access to her property and otherwise denied her the ability to exercise control, access, and use of her property.

57.     SGF unlawfully exercised dominion and control of E.M.'s eggs by refusing to convey them to E.M.'s respective designees.  SGF's refusal was in denial and repudiation of E.M.'s property rights, and constituted conversion.

58.     On June 1, 2021, E.M., authorized and demanded in writing that SGF transfer her frozen eggs.  E.M. signed an authorization drafted by SGF agreeing to transfer her eggs to GIVF using one of SGF's tanks.  SGF represented that it would follow its internal procedures and comply with the relevant laws and regulations.

59.     On or about June 3, 2021, SGF transported three of E.M.'s frozen eggs to GIVF.  SGF did not use its own tanks.  SGF transported E.M's frozen eggs without her knowledge or consent and in violation of the terms of the authorization she signed.

60.     The frozen eggs SGF transported to GIVF were the property of E.M.

61.     The actions of SGF in transferring the frozen eggs denied E.M. access to her property and otherwise denied her the ability to exercise control, access, and use of her property.

62.     SGF unlawfully exercised dominion and control of E.M.'s eggs by transferring them to GIVF without her knowledge or consent.  SGF's refusal was in denial and repudiation of E.M.'s property rights.

63.     On or around January 19, 2022, E.M., authorized and demanded in writing that SGF return her three remaining frozen eggs.

64.     SGF attempted to get E.M. to sign a document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.  The document was materially different than the one SGF sent in June 2021 and asked E.M. to sign before transferring her frozen eggs.

65.     SGF had possession of E.M.'s frozen eggs at the time the demand was made.

66.     The frozen eggs were the property of E.M.

67.     SGF refused to release and/or transport the frozen eggs that belonged to E.M.

68.     The actions of SGF in refusing to release the frozen eggs denied E.M. access to her property and otherwise denied her the ability to exercise control, access, and use of her property.

69.     SGF unlawfully exercised dominion and control of E.M.'s eggs by refusing to convey them to E.M.'s respective designees.  SGF's refusal was in denial and repudiation of E.M.'s property rights, constituting conversion.

70.     SGF's above-described conduct proximately caused E.M. severe harm and emotional distress.

71.     Wherefore, E.M. seeks from SGF compensatory damages in an amount to be determined at trial, which are in excess of $75,000, punitive damages of $3,000,000 or such other amount as this Court may deem proper, pre- and post-judgment interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

## COUNT II
### Negligence/Recklessness

72.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  This applies particularly to Paragraphs 5 through 70.  There is no point in elongating this document by realleging each of these paragraphs, verbatim, in this and every succeeding count, but we request that each of these counts (II through V) be read as if Paragraphs 5 through 70 were specifically included in it.  In particular,  with respect to this Count, in pursuing the conduct described specifically in Paragraphs 5 through 70 above, acted negligently and recklessly, proximately damaging E.M.

73.     SGF, as E.M.'s health care provider, owed her a special duty of care, and a fiduciary duty, with respect to the nature and quality of her medical care and possession of her personal property

attendant to that care.  In particular, it owed her a duty promptly to make her frozen eggs available to her, and to another medical provider which she designated, on her demand, particularly given the time-sensitivity of the egg implantation procedure that was contemplated. It repeatedly breached this duty, in the manner specifically alleged in Paragraphs 5 through 70 of this Complaint, in requiring E.M. to execute documents and make promises to SGF, as a condition for the frozen eggs' return, that were legally impermissible and not contemplated by any party when SGF took possession of this property.

74.      In failing to adhere to this duty, in the manner described specifically in Paragraphs 5 through 70 of this Complaint, SGF negligently and recklessly breached this duty, falling below the requisite standard of care and proximately damaging E.M.  The tort of medical malpractice is not alleged in this Count, nor elsewhere in this Complaint.  Rather, in failing to perform the ministerial task of making her frozen eggs available to E.M., on demand, SGF negligently and recklessly breached its duty to E.M. to return her property to her upon her demand.  We mean this allegation to include simple negligence, gross negligence and recklessness.  SGF displayed a state of mind of wantonness in which it demonstrably did not care about the consequences to E.M. of its actions.  This was evident, *inter alia,* from its insistence on attempting to protect its own institutional interests at the expense of delaying E.M.'s attempts to become a mother.

**COUNT III**
**Breach of Fiduciary Duty**

75.      E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  In particular, in pursuing the conduct described specifically in Paragraphs 5 through 74 above, acted in breach of its fiduciary duty to E.M., proximately damaging her.

76.      SGF, as E.M.'s health care provider, owed her a fiduciary duty with respect to the quality of her medical care.  In particular, it owed her a fiduciary duty to promptly make her frozen eggs

available to her, and to another medical provider which she designated, on her demand.  It failed to discharge this duty, as specifically detailed above.

77.     In failing to adhere to this duty, as described specifically in Paragraphs 5 through 74 of this Complaint, SGF breached its fiduciary duty to E.M., proximately damaging her.

## COUNT IV
### Intentional Infliction of Emotional Distress

78.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth in this Count.  In particular, in pursuing the conduct described specifically in Paragraphs 5 through 70 above, particularly given its special relationship with E.M. described above as her health care provider and the duty of care it owed her, which it breached as alleged above, SGF intentionally inflicted emotional distress upon E.M.  The conduct specifically described in these paragraphs, during which SGF repeatedly denied E.M. access to her frozen eggs and thereby frustrated her efforts to attempt to become pregnant -- the last opportunity she would have to do so in her lifetime -- was extreme, outrageous, beyond the bounds of decency, and constituted intentional infliction of emotional distress, damaging E.M.  Further, given SGF's special relationship with the Plaintiff, and the obligations it undertook to her as her health care provider, which necessarily implicated her emotional well-being, there was an especially likely risk that the defendant's conduct would cause serious emotional distress to the plaintiff, which it did.

## COUNT V
### Negligent Infliction of Emotional Distress

79.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  In particular, in pursuing the conduct described specifically in Paragraphs 5 through 70, particularly given its special relationship with E.M. described above as her health care provider, SGF negligently inflicted emotional distress upon E.M.  The conduct specifically described in these paragraphs, during which SGF repeatedly denied E.M. access to her frozen

eggs and thereby frustrated her efforts during this time period to attempt to become pregnant --
the last opportunity she would have to do so in her lifetime -- was extreme, outrageous, beyond
the bounds of decency, and constituted negligent infliction of emotional distress, damaging E.M.
Further, given SGF's special relationship with the Plaintiff, and the obligations it undertook to
her as her health care provider, which necessarily implicated her emotional well-being, there was
an especially likely risk that the defendant's conduct would cause serious emotional distress to
the plaintiff, which it did.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and respectfully requests
an award of compensatory and punitive damages.  It is specifically alleged that the compensatory
damages she suffered, as a direct and proximate result of SGF's conduct alleged above, exceed
the jurisdictional amount of $75,000.  Further, this conduct was extreme, outrageous and beyond
the bounds of decency.

Plaintiff respectfully demands that this action be tried before a jury.

Respectfully submitted,

/s/ Barry Coburn

Marc Eisenstein
Barry Coburn, DC Bar No. 358020
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
(202) 470-2695
marc@coburngreenbaum.com
barry@coburngreenbaum.com
*Counsel for Plaintiff*