UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.M., : | |
| : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil Action No. 1:24-cv-956-RC |
| : | |
| SHADY GROVE REPRODUCTIVE : | |
| SCIENCE CENTER, P.C., : | |
| : | |
|     Defendant. : | |

FIRST AMENDED COMPLAINT

Plaintiff E.M., through counsel, respectfully sues Shady Grove Reproductive Science Center, P.C. (referenced here as "SGF"). This is her First Amended Complaint, filed pursuant to Fed.R.Civ.P. 15(a)(1)(B).

This case relates to events that occurred after those alleged in E.M.'s prior, pending civil case against SGF ("First Case"). The Defendant is the same in both cases, but the allegations in this (the "Second Case") are of a fundamentally different nature, and involve a different core of operative fact, from those alleged in Plaintiff's First Case. The First Case was filed in the Superior Court of the District of Columbia on or around March 6, 2019. It subsequently was removed by SGF to this Court, where it was assigned Case Number 1:19-cv-00657 (RC). The focus of the First Case is on SGF's alleged failure to treat E.M., and other alleged misconduct, during the course of, and in connection with the termination of, E.M.'s medical relationship with SGF. The instant case, in contrast, is focused upon conduct by SGF relating to its storage of E.M.'s oocytes, after its medical relationship with E.M. terminated, and after the First Case was filed. The lead counts in this case allege conversion, which is not alleged in the First Case.

We append here as Exhibit 1 a copy of the Complaint filed in the First Case. We do not, however, seek to reassert the claims presented in the First Case here. We provide the Complaint in the First Case as an exhibit so as to avoid unnecessarily elongating this Complaint with a reassertion of background facts concerning the parties' prior interactions with one another -- not the claims in the enumerated counts -- presented in the Complaint in Case One. Accordingly, we seek to incorporate by reference, as if set forth here, Paragraphs 1 through 176 of Exhibit 1, for the sole purpose of setting forth that factual background, in order to provide context. However, none of those allegations in Exhibit 1 relate directly to the operative counts of this Complaint. We do not adopt here or reassert any of the individual counts of the Complaint in the First Case.

## **PARTIES**

1.    Plaintiff E.M. is an individual residing in the District of Columbia.

2.    Defendant Shady Grove Reproductive Science Center P.C. is a Maryland professional corporation, domiciled in Maryland, that is registered as a foreign corporation with the District of Columbia's Corporations Division. Shady Grove Reproductive Science Center P.C. has two registered trade names in the District of Columbia – "Shady Grove Fertility RSC" and "Shady Grove Fertility Reproductive Science Center" – but instead typically refers to itself using one of two trade names that are unregistered in the District of Columbia – "Shady Grove Fertility Center," and "Shady Grove Fertility" (all of these names and entities, collectively, referred to here as "SGF"). Shady Grove Fertility, LLC is a Maryland limited liability corporation, and is the sole shareholder in Shady Grove Reproductive Science Center P.C. "Shady Grove Fertility Centers" and "Shady Grove Fertility Reproductive Science Center" are registered trade names in the State of Maryland for Shady Grove Reproductive Science Center P.C. All of these entities are domiciled in Maryland and are sued, collectively, here.

**JURISDICTION**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over this matter because Defendant SGF maintains offices in the District of Columbia, provides services in the District of Columbia, uses real property in the District of Columbia, and has transacted business in the District of Columbia, including with the Plaintiff, who resides in the District of Columbia.

**FACTUAL ALLEGATIONS AND INDIVIDUAL COUNTS**

5. E.M. arranged for another local treatment facility, Genetics and IVF Institute ("GIVF") to receive her frozen egg(s) from SGF and complete the remaining steps necessary to attempt to use her egg(s) to have a biological child.

6. E.M.'s frozen eggs held by SGF were her biological material and her sole personal property. E.M. paid SGF a storage fee for keeping her eggs securely in their liquid nitrogen tank, at extremely low termperatures, where E.M. understands they had been stored since retrieval from her body in October, 2012. SGF's agreement to store E.M.'s personal biological material, so that this material could be used to create a pregnancy, created a special duty of care and loyalty owed by SGF to E.M., as well as a contract. This special duty, owing to SGF's custody of E.M.'s personal biological material and its duty to store it and maintain its viability under extraordinary, special conditions, as well as SGF's prior medical relationship with E.M., created a special, fiduciary relationship with E.M. that transcended an ordinary business relationship.

7. E.M.'s frozen eggs are not, and never were, SGF's property.

8. On or about March 17, 2021, E.M.'s counsel made a preliminary request, in writing, that SGF release one of her frozen eggs. Exhibit 2 to this First Amended Complaint. Her counsel indicated that he would be "back in contact with an actual request to transfer one of E.M.'s eggs." *Id.* The authorization document E.M. executed in connection with this preliminary request, which was adapted from a form provided by SGF, is Exhibit 3. The authorization executed by E.M. refers to "when/if the courier will arrive at SGF."

9. Exhibits 2 and 3 did not specify the new health care entity that would receive the egg in question.

10. We do not have a record of a refusal of this preliminary request from SGF. We do have an email from the assigned mediator in this case, stating: "Lori also asked me yesterday about egg transfers. She reiterated [E.M.] will have to use the modified SGF release form. She also asked that [E.M.] get the logistics set up ahead of time and not wait until the day before." Exhibit 4.

**Count One:**
**Conversion as to Demand on April 5, 2021**

11. SGF insisted that E.M. execute a particular document, purporting to be a "modified" SGF form, before releasing her property to her. This document was entitled, "Request for Release of Oocytes from Shady Grove Fertility." Exhibit 5. It contains language conferring upon SGF a purported release from liability. E.M. executed a revised version of SGF's form, modifying it so that it did not include unreasonable, unjustifiable and inappropriate conditions, such as a release from liability for SGF, that had not been agreed to when SGF commenced storing the frozen eggs. SGF's demand for a release from liability in exchange for providing E.M. with her personal biological property, on demand, was unreasonable and unjustifiable.

12. When E.M. agreed to freeze and store her eggs with SGF, she did not agree that SGF was entitled to impose such conditions upon her, such as a demand for a release from liability, or otherwise inappropriately dictate the terms pursuant to which it would agree to return her own property to her.

13. Consequently, on or about April 5, 2021, using an appropriately modified version of SGF's purported form, E.M. demanded that SGF return one of E.M.'s eggs to her and provide her with the relevant medical records necessary for another clinic, named in the document, to treat her in furtherance of her effort to have her own biological child. Exhibit 6. The version of SGF's form that she used contained reasonable and necessary modifications that, *inter alia,* sought to deny SGF a release of liability, which it had improperly demanded before it would release the frozen eggs. *Id.*

14. Exhibit 6 was transmitted to SGF's counsel by E.M.'s counsel, via email, on April 7, 2021. Exhibit 7. This request was unambiguously and unreasonably refused by SGF via return email on April 12, 2021. Exhibit 7. This claim accrued on that date.

15. SGF's refusal (Exhibit 7) contained the following language:

> As for the transfer authorization form and I am sure you understand, SGF cannot use it as marked up by EM for the following reasons:
>
> SGF cannot release cryopreserved specimens to a courier. SGF can only release specimens to another embryology lab as specified on SGF's standard authorization form. This does not mean that SGF would ship directly to the Transferee Facility, and EM is free to arrange a courier of her choice. SGF just needs to be sure that the authorization clearly states that SGF is transferring to another embryology lab and sets forth the name and address of the embryology lab.
>
> SGF cannot remove the provision regarding risks associated with acts of God.
>
> SGF cannot remove the provision regarding no guarantee after the cryopreserved specimens leave SGF's custody and control. SGF will not

> agree to be liable for acts or omissions of third parties with respect to the cryopreserved specimens.
>
> SGF will not agree to include EM's handwritten note. This is not appropriate to include in an authorization form and is not accurate.

16.     The actions of SGF, commencing on or about April 12, 2021, in refusing to release the frozen eggs and medical records improperly denied E.M. access to her personal property and otherwise denied her the ability to exercise control, access, and use of her property.  The stated reasons for its refusal, set forth in Paragraph 15 above, were unreasonable and unjustifiable for at least the following reasons:  First, the document executed by E.M., dated April 5, 2021 (Exhibit 6), expressly identified the health care entity to which the oocyte was to be transferred.  SGF could have simply looked up its address on the public record, if it needed it for some reason.  Second, the language deleted and added by E.M. was reasonable and appropriate.  SGF's refusal to accept these changes placed its own financial interests above E.M.'s interests, improperly sought to require a release of liability in exchange for E.M.'s biological property, and was unreasonable and unjustifiable.

17.     SGF knowingly, intentionally and unlawfully exercised dominion and control of E.M.'s eggs and related documents by refusing to convey them to E.M.'s respective designees.  SGF's refusal was, improperly, in denial and repudiation of E.M.'s property rights.  This conduct, commencing on or around April 12, 2021, constituted conversion.

18.     SGF had possession of E.M.'s frozen eggs at the time the demand was made on or about April 5, 2021.

19.     SGF had possession of E.M.'s medical records at the time the demand of Apruil 5, 2021 was made.

20. The frozen eggs and medical records were the property of E.M.

21. The actions of SGF in refusing to release the frozen eggs and medical records denied E.M. access to her property and otherwise denied her the ability to exercise control, access, and use of her property.

22. SGF unlawfully exercised dominion and control of E.M.'s eggs and related documents by refusing to convey them to E.M.'s respective designees and her personally.

23. SGF unlawfully exercised dominion and control of E.M.'s eggs by refusing to convey them to E.M.'s respective designee. SGF's refusal was in denial and repudiation of E.M.'s property rights, constituting conversion. As a direct and proximate result of this conduct, E.M. was damaged.

### Count Two:
### Breach of Contract as to Demand on April 5, 2021

24. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

25. A contract, supported by adequate consideration, existed between the parties relating to the oocytes stored by SGF, which came into being when SGF agreed to store the biological material. It was a material term of this contract that the oocytes in question, which were E.M.'s own bodily tissue, would be returned to her on reasonable demand.

26. On April 5, 2024, as delineated above, E.M. made such a reasonable demand for one stored oocyte. In refusing this demand on or around April 12, 2021, SGF was in material breach of its contract with E.M., damaging her.

### Count Three:
### Negligence/Recklessness as to Demand on April 5, 2021

27.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

28.     SGF, as E.M.'s former health care provider and as its custodian of her most personal form of personal property, living tissue from her own body, owed her a special, continuing duty of care, and a fiduciary duty, with respect to its continuing possession of her most intimate, personal property attendant to that care and its duty to maintain it under very special, particularized circumstances, as well as its prior relationship with E.M. as her health care provider.  In particular, it owed her a duty promptly to make her frozen eggs available to her, and/or to another medical provider which she designated, on her demand, particularly given the time-sensitivity of the egg implantation procedure that was contemplated.  It negligently and recklessly breached this duty of care by purporting to require E.M. to execute documents containing unreasonable language, protective of SGF's interests, and make promises to SGF that were designed to protect the company, as a condition for the frozen eggs' return, that were legally impermissible and not contemplated by any party when SGF took possession of this property.  As a direct and proximate result of this breach, E.M. was damaged.

29.     In failing to perform the task of making her frozen eggs available to E.M., on demand, SGF negligently and recklessly breached its duty to E.M. to return her property to her upon her demand.  We mean this allegation to include simple negligence, gross negligence and recklessness.  SGF displayed a state of mind of wantonness in which it demonstrably did not care about the consequences to E.M. of its actions.  This was evident, *inter alia,* from its insistence on attempting to protect its own institutional interests at the expense of delaying E.M.'s attempts to become a mother.

**Count Four:**
**Breach of Fiduciary Duty as to Demand on April 5, 2021**

30.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

31.     As set forth above, SGF, as E.M.'s former health care provider and continuing custodian of her personal property, *i.e.,* living tissue from her own body, owed her a fiduciary duty of care with respect to the quality of the services it provided in connection with its storage of her eggs. In particular, it owed her a fiduciary duty to promptly make her frozen eggs available to her, and to another medical provider which she designated, on her demand, free of unreasonable conditions. It knowingly and intentionally failed to discharge this duty by failing to honor her April 5, 2024 demand for transfer of her eggs, as detailed above.

32.     In failing to dicharge this fiduciary duty to E.M., SGF breached its fiduciary duty to her, proximately damaging her.

## Count Five:
## Intentional Infliction of Emotional Distress as to Demand on April 5, 2021

33.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth in this Count.

34.     In pursuing the conduct described above, particularly given its special relationship with E.M. described above as her former health care provider and continuing custodian of her living tissue, which it breached as alleged above by purporting to require her to execute a document containing unreasonable, inappropriate language protective of SGF, SGF intentionally inflicted emotional distress upon E.M. SGF's denial of E.M.'s access to her frozen eggs, thereby frustrating her efforts to attempt to become pregnant -- the last opportunity she would have to do so in her lifetime -- was extreme, outrageous, beyond the bounds of decency, and constituted intentional infliction of emotional distress, damaging E.M. This emotional distress was a

reasonably foreseeable result of the conduct of SGF set forth in this Complaint.  Further, given SGF's special relationship with the Plaintiff, and the obligations it undertook to serve as the custodian of her personal, living tissue, there was an especially likely risk that the defendant's conduct would cause serious emotional distress to the plaintiff, which it did.

**Count Six:**
**Negligent Infliction of Emotional Distress as to Demand on April 5, 2021**

35.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

36.     SGF negligently inflicted emotional distress upon E.M.  The conduct specifically described in these paragraphs, during which SGF repeatedly denied E.M. access to her frozen eggs, as specifically described above, and thereby frustrated her efforts during this time period to attempt to become pregnant -- the last opportunity she would have to do so in her lifetime -- was extreme, outrageous, beyond the bounds of decency, and constituted negligent infliction of emotional distress, damaging E.M.   Further, given SGF's special relationship with the Plaintiff, and the obligations it undertook to her as her former health care provider and current custodian of her living tissue, which necessarily implicated her emotional well-being, there was an especially likely risk that the defendant's conduct would cause serious emotional distress to the plaintiff, which it did.

**Count Seven:**
**Conversion as to Demand on May 22, 2021**

37.     E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

38.     On or about May 22, 2021, E.M. again demanded the return of her frozen eggs.  She did so through the transmission of an email from her counsel to SGF's counsel, stating:

> Hi Lori, just touching base about the [E.M.] matter. [E.M.] has been asked by her new clinic for an egg, and she needs to provide one by Monday. The conditions your client seeks to impose on her as a prerequisite for turning one over are, in our view, not acceptable and not defensible. This organic material is not just [E.M.'s] property, but was part of her body. I think it would be prudent to turn over an egg on Monday without a release or other conditions. If not, it will be another item of damages and we will be seeking emergency injunctive relief concerning it.

Exhibit 8. In addition, E.M. obtained a document from her new health care provider demanding release of an oocyte from SGF. Exhibit 9.

39. SGF unreasonably and unjustifiably refused to honor this request, insisting, unreasonably and without justification, upon a release including self-protective language. *See* Exhibit 8. E.M. refused to agree to this language. Accordingly, the window of opportunity referenced in Exhibit 8 was missed.

40. When E.M. agreed to freeze and store her eggs with SGF, she did not agree that SGF was entitled to impose such conditions upon her, such as a demand for a release from liability, or otherwise inappropriately dictate the terms pursuant to which it would agree to return her own property to her.

41. SGF refused to release any of E.M.'s eggs pursuant to her demand on May 22, 2021.

42. All of the language in Count One relating to the tort of conversion is specifically re-invoked and incorporated into this Count.

## Count Eight:
## Breach of Contract as to Demand on May 22, 2021

43. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44. By its refusal of E.M.'s demand for return of an oocyte on or around May 22, 2021, SGF breached its contract with E.M. as previously alleged.

45. All of the language in Count Two, relating to claims of breach of contract, is expressly re-invoked and incorporated into this Count.

### Count Nine:
### Negligence/Recklessness as to Demand on May 22, 2021

46. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

47. By its refusal of E.M.'s demand for return of an oocyte on or around May 22, 2021, SGF was negligent and reckless as previously alleged.

48. All of the language in Count Three, relating to claims of negligence/recklessness, is expressly re-invoked and incorporated into this Count.

### Count Ten:
### Breach of Fiduciary Duty as to Demand on May 22, 2021

49. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

50. By its refusal of E.M.'s demand for return of an oocyte on or around May 22, 2021, SGF committed the tort of breach of fiduciary duty.

51. All of the language in Count Four, relating to claims of breach of fiduciary duty, is expressly re-invoked and incorporated into this Count.

### Count Eleven:
### Intentional Infliction of Emotional Distress as to Demand on May 21, 2021

52. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth in this Count.

53. In refusing to honor E.M.'s' demand for an oocyte on or around May 22, 2021, SGF committed the tort of intentional infliction of emotional distress, in the same manner as is alleged in Count Five of this Complaint

54. All of the language in Count Five, relating to claims of intentional infliction of emotional distress, is expressly re-invoked and incorporated into this Count.

## Count Twelve:
## Negligent Infliction of Emotional Distress as to Demand on May 22, 2021

55. E.M. incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

56. In refusing to honor E.M.'s' demand for an oocyte on or around May 22, 2021, SGF committed the tort of negligent infliction of emotional distress, in the same manner as is alleged in Count Six of this Complaint.

57. All of the language in Count Six, relating to claims of negligent infliction of emotional distress, is expressly incorporated into this Count.

## Subsequent Events

58. On June 1, 2021, E.M. signed an authorization drafted by SGF agreeing to transfer her eggs using one of SGF's tanks.

59. On or about June 3, 2021, without E.M.'s knowledge or consent, and in violation of the authorization she signed on June 1, 2021, SGF contacted GIVF and demanded that it send a tank that could be used to transport E.M.'s frozen eggs.

60. SGF transported three of E.M.'s eggs to GIVF, in GIVF's tank, the same day. SGF did not follow its multi-day quality control process in sending E.M.'s frozen eggs to GIVF.

61.     SGF's actions in transporting E.M.'s eggs on or around June 3, 2021 violated SGF's internal policy regarding transportation of frozen eggs.  SGF did not follow its own announced quality control process and procedure.

62.     After the June 3, 2021 transfer, E.M. had a number of frozen eggs remaining at SGF.

63.     On or around October 26, 2021, E.M. demanded that SGF send her remaining frozen eggs to GIVF.

64.     SGF attempted to get E.M. to sign a document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.

65.     SGF refused to return E.M.'s frozen eggs unless she signed the document.

66.     E.M. refused.

67.     SGF refused to release E.M.'s eggs pursuant to her demand on or around October 26, 2021.

68.     On or around January 19, 2022, E.M. demanded that SGF return her three remaining frozen eggs and signed the same documents previously drafted and sent by SGF.

69.     SGF refused to release her eggs.  Instead, SGF attempted to induce E.M. to sign a new document before releasing her property.  The document contained conditions that E.M. did not agree to when she agreed to freeze and store her eggs with SGF.  The document was materially different than the one SGF sent in June 2021 and asked E.M. to sign before transferring her frozen eggs.

70.     Additional correspondence relating to the parties' interactions in November, 2021 and January, 2022 are appended as Exhibits 10 and 11.

71.     SGF returned the frozen eggs on or around January 25, 2022.

72. Now, E.M. is over 50 years old and her medical providers have advised that she can no longer have biological children.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and respectfully requests an award of compensatory and punitive damages. It is specifically alleged that the compensatory damages she suffered, as a direct and proximate result of SGF's conduct alleged above, exceed the jurisdictional amount of $75,000. Further, this conduct was extreme, outrageous and beyond the bounds of decency, justifying an award of punitive damages. E.M. further seeks an award of pre- and post-judgment interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

### JURY DEMAND

Plaintiff respectfully demands that this action be tried before a jury.

Respectfully submitted,

/s/ Barry Coburn

Barry Coburn, DC Bar No. 358020
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
(202) 470-2695
marc@coburngreenbaum.com
barry@coburngreenbaum.com

*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing will be served upon all counsel of record in this case, using this Court's electronic filing service, this 29th day of July, 2024.

/s/ Barry Coburn
_____