**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| E.M., | : | |
| | : | |
|      Plaintiff, | : | |
| | : | |
|      v. | : | Civil Action No. 1:24-cv-00956 (RC) |
| | : | |
| SHADY GROVE REPRODUCTIVE | : | |
| SCIENCE CENTER P.C., | : | |
| | : | |
|      Defendant. | : | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:     */s/ Jeffrey M. Schwaber*

Jeffrey M. Schwaber (Bar ID 419681)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)
Deanna L. Peters (Bar ID 486717)
dpeters@steinsperling.com
(301) 354-8131 (facsimile)
1101 Wootton Parkway, Suite 700
(301) 340-2020

*Attorneys for Defendant, Shady Grove Reproductive
Science Center P.C.*

21131467_1

**TABLE OF CONTENTS**

I.     **INTRODUCTION** .................................................................................. **1**

II.    **STATEMENT OF ALLEGED FACTS AND PROCEDURAL POSTURE PERTINENT TO THE MOTION** ......................................................... **1**

III.   **APPLICABLE LAW AND ARGUMENT** ................................................ **3**

     A.  Legal standard on motion to dismiss ............................................... 3

     B.  The Amended Complaint improperly raises allegations pending in a separate Complaint ....................................................................... 4

     C.  The Amended Complaint is time-barred ......................................... 5

     D.  The Amended Complaint fails to allege necessary elements of each of its purported claims ..................................................................... 7

          1.  Counts One and Seven fail to state claims for conversion ............. 7

          2.  Counts Two and Eight fail to state claims for breach of contract ................................................................................. 9

          3.  Counts Three and Nine fail to state claims for negligence/ recklessness .............................................................................. 10

          4.  Counts Four and Ten fail to state claims for breach of fiduciary duty ........................................................................... 11

          5.  Counts Five, Six, Eleven and Twelve fail to state claims for intentional and/or negligent infliction of emotional distress .......... 12

IV.   **CONCLUSION** ..................................................................................... **16**

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*
     556 U.S. 662, 678 (2009) ............................................................. 3, 4

*Bell Atlantic Corp. v. Twombly*
     550 U.S. 544 (2007) .................................................................... 3, 8

*Billups v. Laboratory Corp. of Am.*
     233 F. Supp. 3d 20 (D.D.C. 2017) ................................................. 7

*Bradley v. Nat'l Collegiate Athletic Ass'n*
     249 F. Supp. 3d 149 (D.D.C. 2017) ........................................... 15, 16

*Brooks-Miller v. England*
     357 F. Supp. 2d 197 (D.D.C. 2004) ............................................... 3

*Cooke-Seals v. District of Columbia*
     973 F. Supp. 184 (D.D.C. 1997) .................................................. 14

*District of Columbia v. Thompson*
     570 A.2d 277 (D.C. 1990) ......................................................... 14

*Dixon v. Midland Mortg. Co.*
     719 F. Supp. 2d 53 (D.D.C. 2010) ................................................. 7

*Doe v. Kipp DC Supporting Corp.*
     373 F. Supp. 3d 1 (D.D.C. 2019) .................................................. 7

*Donelson v. U.S. Bureau of Prisons*
     82 F. Supp. 3d 367 (D.D.C. 2015) ................................................. 4

*Duncan v. Children's Nat'l Med. Ctr.*
     702 A.2d 207 (D.C. 1997) ....................................................... 12, 14

*Hedgepeth v. Whitman Walker Clinic*
     22 A. 3d 789 (D.D.C. 2011) ..................................................... 13, 15

*Henok v. Chase Home Fin.*
     22 A. 3d 789 (D.D.C. 2011) ....................................................... 11

*Inst. Of Multidimensional Med. v. Metagenics, Inc.*
     635 F. Supp. 2d 6, 15 (D.D.C. 2022) ........................................... 12

21131467_1

*Kalbian Hagerty LLP v. Wells Fargo Bank, N.A.*
    C.A. No. 1:20-cv-1091 (JMC), 2023 WL 2733771 (D.D.C. March 31, 2023) .............. 11

*Koch v. Schapiro*
    699 F. Supp. 2d 3 (D.D.C. 2010) ................................................................ 4, 5

*Lesesne v. District of Columbia*
    146 F. Supp. 3d 190 (D.D.C. 2015) ............................................................ 16

*Lipton v. MCI Worldcom, Inc.*
    135 F. Supp. 2d 182 (D.C. 2001) .............................................................. 4

*MobilizeGreen, Inc. v. Cmty. Found. for the Capital Region*
    267 A.3d 1019 (D.C. 2022) ...................................................................... 12

*Oparaugo v. Watts*
    884 A.2d 63 (D.C. 2005) .......................................................................... 3

*Pearson v. Dodd*
    410 F. 2d 701 (D.D.C. 1969) .................................................................... 7

*Scott v. U.S.*
    608 F. Supp. 2d 73 (D.D.C. 2009) ............................................................ 3, 6

*Slate v. Public Defender Serv.*
    31 F. Supp. 3d 277 (D.D.C. 2014) ............................................................ 4, 9

*Teasdell v. District of Columbia*
    C.A. No. 15-0445 (ABJ), 2016 WL 10679536 (D.D.C. Sept. 16, 2016) ................ 15

*Turner v. Afro-American Newspaper Co.*
    572 F. Supp. 2d 71 (D.D.C. 2008) ............................................................ 5, 6

*Vanover v. Hantman*
    77 F. Supp. 2d 91 (D.D.C. 1999) .............................................................. 4

*Wanko v. Catholic University of Am.*
    Civil Case No. 08-2115 (RJL), 2009 WL 3052477 (D.D.C. Sept. 22, 2009) .......... 10, 11

*Williams v. Bank of New York Mellon*
    169 F. Supp. 3d 119 (D.D.C. 2016) .......................................................... 3, 4

*Williams v. District of Columbia*
    9 A.3d 484 (D.C. 2010) .......................................................................... 14

21131467_1

*Youkelsone v. F.D.I.C.*
    910 F. Supp. 2d 213 (D.D.C. 2012) ..................................................................... 6

*Zerilli v. Evening New Ass'n*
    628 F.2d 217 (D.C. Cir. 1980) ........................................................................... 4

**STATUTES**

D.C. Code § 12-301 ................................................................................................. 5

Fed. R. Civ. P. 8 ...................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 3, 5, 6

LCvR 5.1 ................................................................................................................. 5

v

Defendant, Shady Grove Reproductive Science Center P.C. ("SGF"), by its undersigned counsel, Jeffrey M. Schwaber, Deanna L. Peters, and Stein Sperling Bennett De Jong Driscoll PC, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court to enter an Order dismissing, with prejudice, all twelve counts of the First Amended Complaint ("Amended Complaint" or "FAC") filed in this action by Plaintiff, E.M. ("E.M."), and in support thereof, states as follows:

I.      INTRODUCTION

On their face, the allegations of E.M.'s initial Complaint pleaded time-barred claims that otherwise expressly contradicted the documents that are central to them.  Likely knowing that her allegations therefore could not survive SGF's preliminary Motion to Dismiss Plaintiff's Complaint (SGF's "Initial Dispositive Motion") (ECF 13), E.M. attempted to circumvent it by filing her Amended Complaint.  E.M.'s Amended Complaint fares no better.  The documents that E.M. now attaches as Exhibits to her Amended Complaint—albeit cherry-picked from the universe of central documents, as well as the allegations that she altered, expressly negate the elements of each of her claims.  The Amended Complaint should be dismissed.

II.     STATEMENT OF ALLEGED FACTS AND PROCEDURAL POSTURE PERTINENT TO THE MOTION[1]

By 2021, E.M. and SGF had a "prior medical relationship" (*see* FAC at ¶ 6); *i.e.*, E.M. no longer was a patient at SGF.  On March 6, 2019, E.M. filed the case captioned *E.M. v. Shady Grove Reproductive Science Center, P.C.*, Civil Action No. 1:19-cv-00657 (RC) ("Collateral Litigation" or "1:19-cv-00657"), wherein E.M. raised claims, *inter alia*, "in connection with the termination

---

[1] For purposes of SGF's Motion only, and pursuant to the below articulated legal standard, SGF will assume the truth of any arguably well-pleaded factual allegations of the Amended Complaint. SGF does not concede the truth of any such allegations, however, and will defend against E.M.'s allegations should her Amended Complaint somehow survive this Motion.

1

of[ ] E.M.'s medical relationship with SGF."  FAC at p. 1.  The Collateral Litigation remains pending.  *Id.*  Two years later in 2021, E.M. "arranged for another local treatment facility, Genetics and IVF Institute ("GIVF") to receive her frozen egg(s) from SGF."  FAC at ¶ 5.

In her April 3, 2024 initial Complaint in this case, E.M. alleged that "[o]n or about March 17, 2021, E.M. demanded in writing that SGF release one of her frozen eggs to be transported to her new doctor."  ECF No. 1 at ¶ 10.  After SGF filed its Initial Dispositive Motion (ECF No. 13), E.M. changed her allegation, now asserting that her previously alleged "demand" merely was a "preliminary request" for release of one of her frozen eggs.  FAC at ¶ 8.  E.M. now alleges that "on or about April 5, 2021, using an appropriately modified version of SGF's purported [release] form, E.M. demanded that SGF return one of E.M.'s eggs to her … ."  FAC at ¶ 13.  E.M. further alleges that "[o]n or about May 22, 2021, E.M. again demanded the return of her frozen eggs."  FAC at ¶ 38.  E.M. does not—because she cannot—change her allegation that SGF transferred three of E.M.'s six eggs to GIVF on or about June 3, 2021.  *Id.* at ¶¶ 59-61.

On or about October 26, 2021, E.M. demanded SGF transfer to GIVF the remainder of her eggs.  *Id.* at ¶ 63.  On November 8, 2021, after several written communications had been exchanged, E.M.'s counsel told SGF that E.M. decided to delay the transfer. FAC at Exhibit 10. On January 19, 2022, E.M. resurrected a demand for her eggs.  FAC at ¶ 68 and Exhibit 11. Specifically, E.M.'s counsel notified SGF that E.M. wanted "to schedule the transfer for Monday [January] 24th if possible, but Tuesday (25th) and Wednesday (26th) [were] also fine."  *See* FAC at Exhibit 11.  Per E.M.'s request, SGF "returned the frozen eggs on or around January 25, 2022." FAC at ¶ 71.

On September 19, 2023, E.M. filed a Motion for Leave to File First Amended Complaint ("Motion for Leave to Amend") in the Collateral Litigation.   1:19-cv-00657, ECF 119.

2

The proposed amendment sought to add a count for conversion, and to expand E.M.'s existing claim for intentional infliction of emotional distress, based upon almost identical allegations that E.M. now brings in the subject Amended Complaint. *Id.*, ECF 119-2.  Prior to a ruling on her Motion for Leave to Amend, and following this Court's observation at a Status Hearing that the Motion likely was not timely filed, E.M. filed the instant lawsuit on April 3, 2024.  ECF No. 1.  Then, on May 9, 2024, E.M. voluntarily withdrew the Motion for Leave to Amend in the Collateral Litigation. 1:19-cv-00657, ECF 134.

III.    APPLICABLE LAW AND ARGUMENT

A.    <u>Legal standard on motion to dismiss.</u>

"A motion to dismiss under Rule 12(b)(6) tests whether the complaint 'state[s] a claim upon which relief can be granted.'"  *Williams v. Bank of New York Mellon*, 169 F. Supp. 3d 119, 123 (D.D.C. 2016) (citing Fed. R. Civ. P. 12(b)(6)).  To survive the motion, a complaint must allege enough facts to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "'[A] formulaic recitation of the elements of a cause of action will not do.'"  *Scott v. U.S.*, 608 F. Supp. 2d 73, 78 (D.D.C. 2009).  Only well-pled allegations of fact must be accepted and viewed in the light most favorable to the plaintiff.  *Oparaugo v. Watts*, 884 A.2d 63, 78-79 (D.C. 2005) (citations omitted).  This Court, however, need not accept as true allegations that contradict exhibits to the complaint or matters subject to judicial notice. *Scott*, 608 F. Supp. 2d at 81.  Moreover, in assessing the sufficiency of a complaint, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Scott*, 608 F. Supp. 2d at 81 ("The Court 'will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out … if these allegations are contradicted by the description itself.'").  Nor must this Court accept any inferences if they are

3

unsupported by the facts stated in the Complaint.  *See Brooks-Miller v. England*, 357 F. Supp. 2d 197, 200 (D.D.C. 2004).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679.

In addition to the allegations of a complaint, it is proper for a trial court in deciding a motion to dismiss to consider materials that are central to the allegations in the complaint, even where they are not attached to the complaint. *See, e.g., Slate v. Public Defender Serv.*, 31 F. Supp. 3d 277, 288 (D.D.C. 2014) (considering documents central to plaintiff's claim and referenced in complaint); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 182, 186 (D.C. 2001) (citing *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)). Thus, in deciding this Motion, this Court may consider public records, which include records from another court proceeding—here, the Collateral Litigation.  *See Williams*, 169 F. Supp. 3d at 123. *See also Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) (internal citations omitted).

B.   The Amended Complaint improperly raises allegations pending in a separate Complaint.

C.

"'As a general rule, a plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant.'" *Koch v. Schapiro*, 699 F. Supp. 2d 3, 11 (D.D.C. 2010) (quoting *Zerilli v. Evening New Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980)).  E.M.'s attempt is futile to avoid this rule, by now claiming that she does "not adopt here or reassert any of the individual counts of the Complaint in the First Case." FAC at p. 1.  Because E.M. *does* "incorporate by reference, as if set forth" in the Amended Complaint, 176 paragraphs of factual allegations from the Collateral Litigation (FAC at p. 2), the Amended Complaint necessarily arises out of the same factual allegations in the Collateral Litigation.  Contrary to E.M.'s suggestion, the Rules of this Court do not allow for "background"

4

material—especially 176 paragraphs comprising 37 pages—to be included for some purported, limited purpose "to provide context."  FAC at p. 2.  LCvR 5.1(e) mandates that "[n]o complaint … shall have appended thereto any document that is not essential to determination of the action."  *See also* Rule 8(d)(1) (allegations in a pleading "must be simple, concise, and direct") and Rule 8(a)(2) (pleadings shall contain only a "short and plain statement of the claim showing that the pleader is entitled to relief").  The fact that E.M. insists on incorporating the factual allegations of the Collateral Litigation belies her conclusory assertion that "none of those allegations … relate directly to the operative counts" (FAC at p. 2) of the Amended Complaint.

Thus, E.M.'s amendment does not—and cannot—cure the fatal defect from her initial Complaint.  E.M.'s "remedy [was] to move for leave to amend the collateral complaint." *See Koch*, 699 F. Supp. 2d at 12.  The fact that she tactically withdrew her fully briefed Motion for Leave to Amend in the Collateral Litigation (1:19-cv-00657, ECF 134)—seemingly to avoid a formal ruling of untimeliness on her Motion, does not give her *carte blanche* to create her own rules here.  This Court can and should dismiss the Amended Complaint on that basis alone.

D.    The Amended Complaint is time-barred.

"'A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.'" *Turner v. Afro-American Newspaper Co.*, 572 F. Supp. 2d 71, 72 (D.D.C. 2008).  Pursuant to D.C. Code § 12-301, each of E.M.'s common law claims are subject to a three-year statute of limitations.  Thus, her claims "may not be brought after the expiration of" three years "from the time the right to maintain the action accrue[d]." *Id.*

Again backpedaling to try to salvage her claims, E.M. amended her initial Complaint by re-characterizing her March 17, 2021 "demand[ ] in writing" (ECF No. 1 at ¶ 10) as a "preliminary

5

request" (FAC at ¶ 8), followed by formal demands on April 5 (FAC at ¶ 13) and May 22, 2021 (FAC at ¶ 38). As an initial matter, this Court need not accept E.M.'s semantic wordsmanship, because it contradicts the exhibits themselves. *See Scott*, 608 F. Supp. 2d at 81. E.M. alleges that an April 7, 2021 communication *did* comprise an actionable demand (FAC at ¶ 14 and Exhibit 7), which communication states in pertinent part, "[o]f course, we will be in contact with specific instructions on the timing of a transfer *once that becomes known*." FAC at Exhibit 7, Page 2 of 2. The language of the now alleged "preliminary request" is similar, stating, "I will be back in contact with an actual request to transfer one of E.M.'s eggs when that determination is made by her doctor, which we expect will be Thursday of this week at the earliest." FAC at Exhibit 2. If the April 7, 2021 communication—which does not give timing for any delivery or transfer of the eggs— comprises a legal "demand," than so too does the similarly worded March 17, 2021 "preliminary request."

In any event, E.M.'s semantics cannot erase her multiple concessions that the claims she attempted to raise as an amendment to the Collateral Litigation were "viable as early as March 2021." 1:19-cv-00657, ECF 122 at 3. *See also id.* ("…the claim … did not arise until March 2021").[2] Those claims relied on the very same "facts" upon which E.M. now sues SGF again for conversion as well as negligence/recklessness, (*id.* ¶ 73), breach of fiduciary duty, (*id.* ¶ 76), intentional infliction of emotional distress, (*id.* ¶ 78), and negligent infliction of emotional distress, (*id.* ¶ 79). Each of E.M.'s claims is based upon an allegation that "SGF insisted that E.M. execute a particular document, purporting to be a 'modified' SGF form, before releasing her property to

---

[2] As stated, this Court may consider filings within the Collateral Litigation for purposes of deciding this Motion. *See, e.g., Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213, 224 (D.D.C. 2012) (considering publicly available records, of which the Court took judicial notice, to determine date of knowledge of alleged injuries, and therefore the untimeliness of plaintiff's claims on 12(b)(6) motion raising statute of limitations).

6

her. … SGF's demand for a release from liability in exchange for providing E.M. with her personal biological property, on demand, was unreasonable and unjustifiable." FAC at ¶ 11. E.M. alleges that SGF communicated that condition *on March 30, 2021*. *See* FAC at ¶ 10 and Exhibit 4 ("[SGF counsel] reiterated [E.M.] will have to use the modified SGF release form").[3] As such, every cause of action pled here accrued at the latest on March 30, 2021, giving E.M. three years—until March 2024—to file this lawsuit. Because she did not do so until April 2024, the Complaint is time-barred and should be dismissed with prejudice. *See Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1 (D.D.C. 2019) (dismissing claims as time-barred on Rule 12(b)(6) motion); *Billups v. Laboratory Corp. of Am.*, 233 F. Supp. 3d 20 (D.D.C. 2017) (same).

      E.      <u>The Amended Complaint fails to allege necessary elements of each of its purported claims.</u>

Even assuming, *arguendo*, that any of E.M.'s claims somehow timely are raised now, the Amended Complaint nonetheless fails to state any claim upon which relief may be granted, because E.M. fails plausibly to plead essential elements of each claim.

      1.      *Counts One and Seven fail to state claims for conversion.*

Under District of Columbia law, conversion is defined as the "'intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" *Dixon v. Midland Mortg. Co.*, 719 F. Supp. 2d 53, 56-67 (D.D.C. 2010) (citations omitted). However, "not every wrongful interference with the personal property of another is a conversion." *Pearson v.*

---

[3] By referencing the Amended Complaint's exhibits in this Motion, SGF does not concede that communications, by and with a mediator in the Collateral Litigation that are marked "Confidential, for Mediation – Settlement Purposes Only" (*see, e.g.,* Exhibit 4) are properly before this Court in a pleading asserting claims for relief.

*Dodd*, 410 F. 2d 701, 706 (D.D.C. 1969).  A conversion may exist only where there exists a "complete or very substantial deprivation of possessory rights in the property."  *Id*.

The allegations of the Amended Complaint do not "state a plausible claim" (*Twombly*, 550 U.S. at 570) for conversion; rather, the allegations contradict such a claim.  The Amended Complaint expressly alleges that SGF released and returned E.M.'s eggs on June 3, 2021 (FAC at ¶ 59) in response to E.M.'s respective alleged demands six weeks earlier on April 5 and eleven days earlier on May 22.  With such return of E.M.'s eggs pursuant to her demands, E.M. has failed to allege any fact at all that plausibly may comprise the complete or very substantial deprivation of any possessory rights E.M. had in her eggs.

E.M.'s allegation that "[n]ow, E.M. is 50 years old and her medical providers have advised that she can no longer have biological children" (FAC at ¶ 72) is insufficient, because there is not even an attempt to link her egg return *over three years ago* (in June, 2021) with her present medical condition (in August, 2024).  While E.M. alleges that "SGF did not follow its multi-day quality control process in sending E.M.'s frozen eggs to GIVF" (FAC at ¶ 60), E.M. does not allege *any* harm or damage to the eggs as a result of the alleged failure.  Indeed, E.M. alleges in the Amended Complaint that she continued to demand—and receive from SGF—her remaining frozen eggs in the January 2022 timeframe for purposes of treatment at GIVF.  FAC at ¶¶ 68-71.  *See also* FAC at Exhibit 11 (scheduling transfer of remaining frozen eggs to a GIVF embryologist to occur by January 26, 2022).[4]  E.M.'s possessory rights in the frozen eggs that SGF returned on June 3, 2021

---

[4]  In her initial Complaint, E.M. made at best incomplete allegations that SGF refused her demand in October of 2021 to release the remaining frozen eggs, when the complete chain of correspondence between the parties demonstrates that it was E.M. who called off the transfer arrangements.  *See* FAC at Exhibit 10.  Tellingly, E.M. makes no claim in the Amended Complaint based on the October 2021 or January 2022 demands, and now attaches the correspondence where E.M.'s counsel renewed the transfer request on January 19, 2022, stating that "Tuesday (25th) and Wednesday (26th) are also fine" for a transfer.  FAC at Exhibit 11.  As alleged in the Amended Complaint, SGF made the transfer on January 25, 2022.  FAC at ¶ 71.

could not conceivably have been completely or substantially deprived during the time that E.M. alleges SGF "exercised dominion and control" (*see, e.g.,* FAC at ¶ 17) over them.

2.  *Counts Two and Eight fail to state claims for breach of contract.*

For her breach of contract counts, E.M. alleges as follows:

> A contract, supported by adequate consideration, existed between the parties relating to the oocytes stored by SGF, which came into being when SGF agreed to store the biological material.  It was a material term of this contract that the oocytes in question, which were E.M.'s own bodily tissue, would be returned to her on reasonable demand.

FAC at ¶ 25.  While E.M. conveniently omits it from her Amended Complaint, the Consent for Oocte (Egg) Retrieval, Cyropreservation and Storage (the "Egg Storage Consent") is the document that she signed relating to the frozen egg storage *and* any transfer.  *See* Egg Storage Consent, a copy of which is attached hereto and incorporated herein as <u>Exhibit 1</u>.[5]  The Egg Storage Consent therefore is "central to the allegations in the complaint" and can—and should—be considered by this Court.  *See, e.g., Slate*, 31 F. Supp. 3d at 288.

Even to the extent that the return of "the oocytes in question … on reasonable demand" comprised a "material term" of the contract alleged in Counts Two and Eight (FAC at ¶¶ 25 and 45), the Egg Storage Consent necessarily defeats E.M.'s allegation that she made any "reasonable demand" on either April 5 or May 22 (FAC at ¶¶ 26, 44, and 45) that would require performance by SGF.  In the Egg Storage Consent, E.M. acknowledged as follows:

> If I opt to transfer cryopreserved eggs to another fertility center or long-term storage facility, I understand that I have full and sole responsibility for the transport and disposition of the cryopreserved eggs ***and hereby release [SGF] from any and all responsibility relating to the transport of the cryopreserved eggs.***

---

[5]  Pursuant to this Court's April 9, 2024 Memorandum Opinion and Order, SGF has redacted <u>Exhibit 1</u> to remove E.M.'s name.  This same form of <u>Exhibit 1</u> has been publicly filed in the Collateral Litigaiton.

<u>Exhibit 1</u> at 9 of 11 (emphasis added).  E.M., however, repeatedly refused to abide by the Egg Storage Consent.  As alleged in the Amended Complaint, E.M. acknowledges that SGF has a "normal form for transfer" of frozen eggs (FAC at Exhibit 2), which E.M. unilaterally declined to use.  *Id.*  E.M. instead accompanied her demands for transfer of the frozen eggs with declarations, contrary to the ones she made in the Egg Storage Consent, that "I do not release SGF from *any* liability and I do not waive *any* claims against SGF in authorizing this transfer."  FAC at ¶ 8 and Exhibit 3 (citing and attaching the "authorization document E.M. executed in connection with" her March 17, 2021 preliminary request) (emphasis added).  *See also* FAC at ¶ 13 and Exhibit 6 (citing E.M.'s April 5, 2021 Request for Release of Oocytes from Shady Grove Fertility, wherein E.M. asserts "I do not release SGF or any of its affiliates of any liability and I do not waive any claims against SGF or its affiliates in authorizing this transfer.").

In light of the Egg Storage Consent, E.M.'s bald allegations that she made a "reasonable demand" for her eggs, and that "SGF was in material breach of its contract with E.M." by refusing it (*see* FAC at ¶ 26) are not well-pled and need not be accepted by this Court.  The allegations of the Amended Complaint therefore do not—and cannot—state a plausible claim for breach of contract.

3.     *Counts Three and Nine fail to state claims for negligence/recklessness.*

For an action in negligence to survive a motion to dismiss, a plaintiff must allege facts sufficient to "establish: (1) that the defendants owed him a duty of care, (2) that the defendants breached that duty, and (3) that the breach proximately caused damages to the plaintiff." *Wanko v. Catholic University of Am.*, Civil Case No. 08-2115 (RJL), 2009 WL 3052477, at *6 (D.D.C. Sept. 22, 2009). The Amended Complaint fails because it does not meet even the threshold duty requirement.

10

21131467_1

Under District of Columbia law, the tort of negligence "'must exist in its own right independent of [a] contract, and any duty upon which the tort is based must flow from considerations *other than* the contractual relationship.  The tort must stand as a tort even if the contractual relationship did not exist.'"  *Henok v. Chase Home Fin.*, 915 F. Supp. 2d 162, 170 (D.D.C. 2013) (emphasis added).  Here, E.M. alleges that "SGF's *agreement* to store E.M.'s personal biological material … created a special duty of care and loyalty owed by SGF to E.M., *as well as a contract*."  FAC at ¶ 6 (emphasis added).  Thus, she expressly pleads the opposite of what District of Columbia law requires for this element.  Absent a cognizable duty in tort—as opposed to contract, E.M.'s negligence claims fail at the outset. *See Henok*, 915 F. Supp. 2d at 171 (dismissing negligence count where no duty is alleged independent of a contractual relationship). *See also Wanko*, 2009 WL 3052477, at *6 (dismissing negligence count for failure to allege duty).

4.     *Counts Four and Ten fail to state claims for breach of fiduciary duty.*

E.M. attempts to raise the stakes on her fatally flawed negligence claims by accusing SGF of breach of fiduciary duty.  These counts are equally unavailing.  Similar to one for negligence, a claim for breach of fiduciary duty "must allege facts sufficient to show (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the plaintiff suffered an injury that was proximately caused by that breach." *Kalbian Hagerty LLP v. Wells Fargo Bank, N.A.*, C.A. No. 1:20-cv-1091 (JMC), 2023 WL 2733771, at *2 (D.D.C. March 31, 2023).  The existence of a fiduciary duty "is a factual question generally left to be resolved later in litigation." *Id.* at *3.  However, such a claim will be dismissed when, like here, "a plaintiff's complaint does not include enough factual allegations to make it plausible that a fiduciary relationship exists." *Id.*

E.M. first alleges SGF's duty arises here because SGF was "E.M.'s former health care provider."  FAC at ¶ 31.  There is nothing in District of Columbia law, however, that would create

11

a duty, into perpetuity, by a health care provider for a former, terminated patient.  Nor can E.M. establish some fiduciary duty based on an allegation that SGF was a "continuing custodian of her personal property."  FAC at ¶ 31.  E.M. alleges that role arose out of contract, "but it is black-letter law that '[t]he act of … entering into a contractual relationship' does not without more give rise to 'a fiduciary duty beyond the terms' of the agreement."  *MobilizeGreen, Inc. v. Cmty. Found. for the Capital Region*, 267 A.3d 1019, 1026 (D.C. 2022).  There is nothing in the Egg Consent Transfer—which states the terms upon which SGF stored E.M.'s frozen eggs—that "transcends an ordinary business transaction."  *Inst. Of Multidimensional Med. v. Metagenics, Inc.*, 635 F. Supp. 2d 6, 15 (D.D.C. 2022).  E.M.'s conclusory allegations of some special duty in Counts Four and Ten are patently insufficient to state a fiduciary duty, warranting dismissal of these counts.[6]

     5.    *Counts Five, Six, Eleven and Twelve fail to state claims for intentional and/or negligent infliction of emotional distress*.

In two paragraphs of the Amended Complaint in which she does no more than parrot conclusory, legal buzzwords, E.M. alleges that she has suffered severe emotional distress for which she should be awarded damages because SGF would not release her eggs under the conditions she dictated.  *See* FAC at ¶¶ 34 and 36.  To successfully state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant (1) engaged in extreme and outrageous conduct, (2) had the intent to cause or disregard a substantial probability of causing severe emotional distress, (3) a causal connection between the conduct and the injury exists, and (4) severe emotional distress.  *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211 (D.C. 1997)

---

[6] E.M. makes the bald allegation, with no underlying facts, that "SGF … proximately damag[ed] her."  FAC at ¶ 32.  E.M.'s failure to make any "factual allegations whatsoever suggesting that [SGF's] alleged breach of fiduciary duty proximately caused any injury" to her is another, independent basis for dismissal of her claims.  *See Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 54-55 (D.D.C. 2009) (dismissing breach of fiduciary duty claim).

(affirming grant of motion to dismiss and finding as a matter of law that conduct as alleged did not rise to the level of outrageousness).

E.M. alternatively pleads negligent infliction of emotional distress.  In addition to causation and damages, when a plaintiff, like E.M. here, does not allege a physical injury, this tort requires a plaintiff to "show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, and (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff[.]" *Hedgepeth v. Whitman Walker Clinic,* 22 A. 3d 789, 810-11 (D.D.C. 2011).  The Amended Complaint cannot survive dismissal under either theory.

To begin, the factual allegations never connect SGF's conduct to the reasons alleged for her emotional distress.  For example, while E.M. includes allegations such as "[n]ow, [in 2024, she] is 50 years old and her medical providers have advised that she can no longer have biological children" (FAC at ¶ 72), E.M. does not allege that she would or could have had children in 2021 or 2022 had SGF more immediately heeded to E.M.'s demands—or before then had E.M. chosen to make an earlier demand.  E.M. further does not include *any* factual support for her bald and conclusory allegation that SGF "frustrat[ed] her efforts to attempt to become pregnant – the last opportunity she would have to do so in her lifetime." *Id.* at ¶¶ 34 and 36.  This is because E.M.'s allegation is flatly and necessarily contradicted by the subsequent allegations in her Amended Complaint.  As alleged in the Amended Complaint, April 2021 was *not* E.M.'s "last opportunity" to become pregnant, because she again made demands for frozen eggs on May 22, 2021 (*see* FAC at ¶ 38 and Exhibit 8 (alleging that "[E.M.] has been asked by her new clinic for an egg")) and January 19, 2022.  *See* FAC at ¶ 68 and Exhibit 11.

13

Indeed, E.M. decided in November 2021, "not to go through with the transfer at th[at] moment, as she[ ] [was] dealing with some unrelated issues right [then]." FAC at Exhibit 10. In that same email, E.M.'s counsel continued: "We'll reach back about the transfer soon – my estimate would be a week or two." *Id.* After repeated follow up from SGF on January 19, 2022, E.M.'s counsel informed SGF—now, almost *six weeks later*—that E.M. finally was ready to schedule the transfer to GIVF for either January 24, 25, or 26, 2022. FAC at Exhibit 11. The Complaint states the transfer occurred on January 25—a day *earlier* than the latest day E.M. demanded it take place. FAC at ¶ 71. Nor, under the facts alleged in the Amended Complaint, is it plausible that SGF engaged in extreme and outrageous conduct, when it was acting *consistently with* the Egg Storage Consent and its associated release in connection with the transfer and transport of E.M.'s eggs (*see* Exhibit 1), when E.M. attempted to disavow her acknowledgement of same.

In any event, there is no general duty of care to avoid mental distress. Simply put, a party will not be held liable for all conduct that causes mental distress to another. *Duncan*, 702 A.2d at 211 (citing *District of Columbia v. Thompson*, 570 A.2d 277, 290 (D.C. 1990)). Thus, for intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Williams v. District of Columbia*, 9 A.3d 484, 494 (D.C. 2010) (granting motion to dismiss finding that employer-employee conflicts do not generally rise to level of outrageous conduct). This "is a very demanding standard, infrequently met." *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 188 (D.D.C. 1997) (granting motion to dismiss and holding allegations of a pattern of discrimination and abuse of supervisory power through incidents of harassment did not amount to "extreme and outrageous"

14

conduct).  This standard hardly can be met here, where, at worst, E.M.'s allegations state a lapse of a few months in between her demand for her eggs, and the return of them.  Thus, the facts as alleged in the Amended Complaint are insufficient to impute intentional, extreme, or outrageous conduct on the part of SGF that would support the tort of intentional infliction of emotional distress as a matter of law.  Therefore, this Court should dismiss Counts Five and Eleven.

For negligent infliction of emotional distress, a defendant must have "undertaken an obligation to the plaintiff of a nature that necessarily implicates [her] emotional well-being[.]" *Bradley v. Nat'l Collegiate Athletic Ass'n,* 249 F. Supp. 3d 149, 183 (D.D.C. 2017) (quoting *Hedgepeth,* 2 A.3d at 810-11).

> Accordingly, "[w]hether the defendant breached [its] obligations is to be determined by reference to specific terms of the undertaking agreed upon by the parties, or otherwise, by an objective standard of reasonableness applicable to the underlying relationship or undertaking."

*Teasdell v. District of Columbia*, C.A. No. 15-0445 (ABJ), 2016 WL 10679536, at *15 (D.D.C. Sept. 16, 2016) (quoting *Hedgepeth*, 22 A.3d at 811).  Few relationships "come within the [special relationship] rule, because neither the purpose of the relationship nor the [defendant]'s undertaking is to care for the plaintiff's emotional well-being." *Id.* (internal quotations removed).  E.M. cannot meet this standard here, given the terms of the Egg Storage Consent discussed above.

Moreover, when SGF dismissed E.M. as a patient in February 2019, it tried completely to sever the relationship between the parties. In its dismissal letter, SGF "recommended four fertility clinics" where it could transfer E.M.'s eggs. *See* FAC at Exhibit 1 at ¶ 170.  E.M. refused to allow it until March 2021, which by that time, E.M. had not been SGF's patient for years *and* the parties were engulfed in the Collateral Litigation. *See, e.g.,* FAC at p.1, and ¶¶ 10 and 41.  As a result, SGF's sole "undertaking" vis-à-vis E.M. was to store her eggs.  Under any objective standard of reasonableness, it is not conceivable that "the purpose of the relationship" between SGF and E.M.

15

as of March 2021—after two years of contentious litigation filed by E.M.—"involved care for [E.M.]'s emotional well-being." *Bradley,* 249 F. Supp. 3d at 183 (quoting *Lesesne v. District of Columbia*, 146 F. Supp. 3d 190, 198 (D.D.C. 2015)). Counts Six and Twelve thus should be dismissed.

IV.     CONCLUSION

For the foregoing reasons, Defendant, Shady Grove Reproductive Science Center, P.C., requests that this Court enter an Order dismissing with prejudice the Amended Complaint in its entirety, and especially given that E.M. already has amended her pleading once, with no further leave to amend.  A proposed order is attached.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:        /s/ *Jeffrey M. Schwaber*
Jeffrey M. Schwaber (Bar ID 419681)
jschwaber@steinsperling.com
(301) 354-8110 (facsimile)
Deanna L. Peters (Bar ID 486717)
dpeters@steinsperling.com
(301) 354-8131 (facsimile)
1101 Wootton Parkway, Suite 700
(301) 340-2020

*Attorneys for Defendant, Shady Grove Reproductive Science Center P.C.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of August, 2024, a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via ECF.


<u>     /s/ *Jeffrey M. Schwaber*     </u>

17